UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ANA QUINONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.12-CV-10120-JGD |
| | ) | |
| UNITED STATES POSTAL SERVICE; | ) | |
| HALINA D. MITURA; and MITURA | ) | |
| FISHING CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND RULINGS OF LAW**

1. Plaintiff sued Mitura Fishing Corp., Halina Mitura ("Mitura"), and the United States Postal Service ("USPS") for personal injuries she claims she suffered because of a June 5, 2009, 2:05 p.m. accident during which her vehicle collided with a truck owned by Mitura Fishing Corp. and driven by Mitura.

   2. The motor vehicle accident occurred on the access road that cuts through the parking lot of the Mill River Plaza in Taunton, Massachusetts, near the adjacent Dunkin Donuts parking lots.

   3. Many drivers use the access road as a thruway between Washington and Cohannet streets to avoid streetlights and save time.

   4. Mill River Plaza is a busy commercial area with restaurants, medical offices, and the

Registry of Motor Vehicles located there.

5. The access road is narrow, with two lanes, and is typically very congested from high vehicle and pedestrian traffic.

6. On June 5, 2009 Plaintiff was using the access road to go from the pharmacy across the street from the mall, where she had picked up her children's prescriptions, to return home.

7. Plaintiff had lived in Taunton, Massachusetts for eleven years on June 5, 2009, and made monthly trips to the Mill River Plaza parking lot to take her children to the doctor and pick up their prescriptions.

8. Plaintiff was traveling at approximately 15- 20 miles per hour on the access road immediately prior to the collision with Mitura's truck.

9. Plaintiff 'S front left fender, and both the driver's door and passenger's door (on the driver's side) of her vehicle came into contact with the driver's side mirror and back bumper of Mitura's truck.

10. On June 5, 2009, there were no stop signs located at many of the entrances and exits adjacent to the access road.

11. One June 5, 2009, the road was 33.5 feet wide from the curb the marked the right side of one lane to the curb that marked the right side of the oncoming lane.

12. There was a fire lane immediately adjacent to the main mall building at Mill River Place.

13. A postal truck is 6'4" wide with mirrors on each side that are 8" wide.

14. Plaintiff was driving a 2001 Saturn SW2 that was 5'7" wide without mirrors.

15. Mitura was driving a 2003 Ford F150 that was between 6'7" wide without mirrors.

16. Many accidents occur on the access road, with high vehicle traffic going in and out and pedestrian traffic.

17. On June 5, 2009, there was high vehicle and pedestrian traffic.

18. On June 5, 2009, Robert Leal was employed by the USPS as a mail carrier and drove an LLV (long-lasting vehicle).

19. The USPS driver had a mail delivery route near the Mill River Plaza and often stopped at the Dunkin Donuts adjacent to the access road during breaks, either parking in the Dunkin Donuts second parking lot or parking in a fire lane on the westerly side of the access road and crossing the access road on foot, to get coffee or use the restroom.

20. At the time of the accident, the USPS truck was parked in the fire lane.

21. Since Mr. Leal was not actually delivering mail at the site, there was no privilege to him to park in the fire lane.

22. On June 5, 2009, Mitura was driving a vehicle owned by Mitura Fishing Corp. for a personal errand on the access road toward Washington Street after having stopped at the Registry of Motor Vehicles.

23. On June 5, 2009, Plaintiff entered the access road by crossing Washington Street from Tremont Street, driving in the direction opposite from Mitura, but in the same direction and behind the USPS driver in the USPS truck.

24. Plaintiff saw the USPS truck when she first entered the access road.

25. Plaintiff observed the USPS truck ahead of her on the access road and she saw it pull out from the curb.

26. Plaintiff was driving at a speed between fifteen and twenty miles per hour and was a distance of between two and five feet away from the USPS truck when she beeped her horn at the USPS truck.

27. Plaintiff put on her brakes for a period of time and released them, which allowed her to stop briefly behind the USPS truck to "let him go," presumably to take a left turn into the parking lot.

28. When the vehilce did not move, Plaintiff then "swerved to the side" - the left side - of the USPS truck and was attempting to drive around its left side when she claims she was struck by Mitura's truck.

29. As the Plaintiff was passing the USPS truck, the truck began to move and pulled to the left into the Plaintiff's line of travel.

30. This move to the left caused the Plaintiff to move her vehicle to the left, forcing her into the lane into which Mitura had just steered her vehicle from another area of the parking lot..

31. Plaintiff did not come to a complete stop until the time of the impact.

32. Mitura testified that she was driving at approximately twenty miles per hour with a distance of five feet between the left side of her vehicle and the left side of the USPS truck when Plaintiff attempted to drive around the left side of the USPS truck.

33. The front left, or driver's side fender and door, of Plaintiff's vehicle impacted the back left, or driver's side door and rear fender, of Mitura's vehicle.

34. Neither Plaintiff's nor Mitura's vehicle made physical contact with the USPS truck, and the USPS truck suffered no scrapes, dents, or other impacts from the collision Plaintiff had with Mitura.

35. After the impact, Plaintiff saw additional vehicles traveling behind Mitura's vehicle in the same direction as Mitura, and Plaintiff had to move her vehicle to avoid any further collisions with the oncoming traffic, which had to stop for her.

36. After the collision, the USPS driver exited the USPS truck, went to see if Mitura needed assistance, and then gave Mitura his name and phone number, offering to be a witness to the accident.

37. Sometime within fifteen minutes, Officer Steven Burns arrived on the scene.

38. Plaintiff, whose first language is Spanish, called her brother's then-fiancée, Doris Marrero, who worked in the immediate area, to come to the scene of the accident to interpret for Plaintiff.

39. The responding officer considered the USPS driver a witness to the accident.

40. The USPS driver Leal was negligent in parking in a fire lane in violation of M. G. L. c. 89, §7.

41. The purpose of M. G. L. c. 89, §7 is to leave clear space for the travel and placement of firefighting and other emergency vehicles and to permit a safe and smooth flow of vehicular traffic.

42. The parking of the vehicle in the fire lane and its protrusion into a lane of travel of ordinary vehicular traffic created an undue hazard, a situation which the law was created to prevent.

43. The USPS driver Leal was negligent in failing to exercise due caution in looking for vehicles to the rear and side of him before pulling away from the curb.

44. The Plaintiff acted reasonably in attempting to pass the USPS vehicle that was parked and blocking traffic.

45. At the time that the Plaintiff began to pass the USPS vehicle, she could not have seen the Mitura vehicle turning into the opposite lane of travel.

46. When the Plaintiff was passing the USPS vehicle, she gave due warning by means of honking her horn when she saw the vehicle begin to move.

47. The USPS driver Leal was negligent in failing to heed the warning from the Plaintiff.

48. The Plaintiff's turn into the opposite lane was necessitated by the movement of the USPS vehicle and a collision with the Mitura vehicle could not have been avoided.

49. The Plaintiff properly followed the prerequisites of the Federal Tort Claims Act in making a presentment to the United States Postal Service.

50. The response of the United States Postal Service to the presentment letter was inadequate and did not address the issues actually raised in the presentment letter.

51. Upon review of the medical records, vehicle repair records, and other evidence of the impact of the accident to the Plaintiff, the Court finds that the Plaintiff suffered pain and suffering and inconvenience in the loss of use of her vehicle for a period of time at least to the amount of Thirteen Thousand ($13,000.00) Dollars as alleged in the presentment letter.

WHEREFORE, judgment shall enter for the Plaintiff in the amount to THIRTEEEN THOUSAND ($13,000.00) Dollars, plus the costs of this action.

_____

Judith G. Dein

United States Magistrate Judge

/s/Jordan H. F. Fiore

Jordan H. F. Fiore, Esquire

BBO#166800

One Taunton Green

P. O. Box 2331

Taunton, MA 02780

(774)961-7392

February 15, 2013

**CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants by first class mail.

      /s/Jordan H. F. Fiore

      Jordan H. F. Fiore, Esquire

      BBO#166800

      One Taunton Green

      P. O. Box 2331

      Taunton, MA 02780

      (774)961-7392

February 15, 2013